916 F.2d 714
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WHITE ASH MINING COMPANY, Petitioner,
v.
Delmer BURCHETT and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondent.
 No. 89-3295.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, White Ash Mining Company (White Ash), appeals from a decision of the Benefits Review Board (Board), United States Department of Labor (Department or Secretary). Although this is a black lung case, it is conceded by all parties that the claimant, Delmer Burchett, is entitled to benefits. The only matters at issue are whether this appeal was timely filed and, if so, whether White Ash or the Black Lung Disability Trust Fund (the Fund) is responsible for paying the benefits to Burchett.
 
 
 2
 Upon a review of the record, we conclude that the petition for review was timely filed, but we are unable to resolve the question of responsibility for benefits without a remand.
 
 I. THE JURISDICTIONAL ISSUE
 
 3
 The facts surrounding the jurisdictional issue are not in dispute and easy to state. On November 30, 1988, the Board filed and mailed copies of its decision holding that White Ash was liable for the benefits owed to Burchett. The copy of the decision intended for White Ash was mailed only to its attorney of record;[1] unfortunately, the Board mailed this letter to the wrong address. On April 15, 1988, the attorney for White Ash notified the Board in writing of a change of address. Counsel also filed a forwarding order with the United States Postal Service, but under Postal Service regulations that order expired on November 1, 1988. The first notice that White Ash had of the unfavorable decision was on March 17, 1989, when it received a demand letter from the Department requesting reimbursement of benefits that the Department had paid to the claimant. On April 11, 1989, White Ash filed its petition for review, well within the 60-day period allowed for the filing of such petitions if the time is measured from the date it received actual notice of the adverse decision.[2]
 
 
 4
 Notwithstanding that the Director and White Ash both agree that this appeal is properly before us, considerable ink is spilled by the parties discussing this issue. We believe the matter can be resolved much more succinctly, since we limit our holding to the precise facts involved here and make no effort to deal with the issue of late-filed petitions for review in general.
 
 
 5
 Regulations adopted by the Secretary provide that:
 
 
 6
 The original of the decision shall be filed with the Clerk of the Board. A copy of the Board's decision shall be sent by certified mail or otherwise presented to all parties to the appeal and the Director. The record on appeal, together with a transcript of any oral proceedings, any briefs or other papers filed with the Board, and a copy of the decision shall be returned to the appropriate deputy commissioner for filing.
 
 
 7
 20 C.F.R. Sec. 802.403(b) (1990).
 
 
 8
 Where the Board, through its own neglect, fails to notify a party of an adverse decision, it would appear that elemental considerations of fairness and due process dictate that the party cannot be thus deprived of its right to appeal, and we so hold.[3] In reaching this result, we are not unmindful of Federal Rule of Civil Procedure 77(d), which provides that "lack of notice of the entry by the clerk [of an order or judgment] does not affect the time to appeal...." We note, however, that the Secretary's procedures outlined in the promulgated regulations contain no such language.[4]
 
 II. THE TRANSFER ISSUE
 
 9
 In order to understand this issue, it is necessary to set forth the chronology of Burchett's claim for benefits against the backdrop of legislative changes made by Congress in the Black Lung Benefits Act during the period of time relevant to the processing of the claim.
 
 
 10
 Burchett first filed an application for black lung benefits on June 24, 1975. On June 15, 1976, the Department sent Burchett a form letter designated CM-977a, which reads in pertinent part:
 
 
 11
 We are contacting you in connection with the review of your claim for benefits under the black lung law. The results of your recent medical examination as well as the other medical evidence now in your file are not sufficient to establish that you meet the disability requirements of the law. However, you have a right to submit additional evidence relating to your lung (breathing) condition for consideration in making a decision on your claim.
 
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 If you wish to pursue your claim further and undergo blood-gas and exercise tests, fill out and return the enclosed card. You will then be sent the name of a physician to contact for an appointment.
 
 
 16
 If we do not hear from you within 10 days, it will be necessary to process your case on the information now in file.
 
 
 17
 Although it is extremely important to the resolution of this issue, it is not clear whether Burchett did anything within this ten-day period or not. In the record there is a letter bearing the date of June 21, 1976,[5] and addressed to the U.S. Department of Labor. The letter reads in its entirety:
 
 U.S. Department of Labor
 Employment Standards Administration
 Office of Workmen's Compensation Programs
 
 18
 Division of Coal Mine Workers' Compensation
 
 Washington, D.C. 20210
 RE: No. gge-ke-ycki/p>
 Delmer Burchett
 General Delivery
 Stambaugh, Ky. 41257
 Gentlemen:
 
 19
 I hereby authorize and appoint G.C. Perry, III, 82 Main Street, Paintsville, Kentucky, 41240 to represent me before the Office of Workmen's Compensation Programs in pursuit of my claim for benefits under the Black Lung Act.
 
 
 20
 In support thereto I attach medical data from the following:
 
 Dr. E.E. Musgrave
 Dr. Robert Penman
 Dr. Ballard Wright
 Dr. I.D. Scott
 Dr. A.W. Goodwin
 Dr. Robert Roe
 
 21
 Yours very truly,
 
 
 22
 /s/Delmer Burchett
 
 Claimant
 
 23
 (App. 49). There is nothing that is a part of this record that informs the court as to what occurred within the Department after the expiration of the ten days. However, in 1977, Congress passed the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95-239, 92 Stat. 95 (1978), which directed the Secretary to reconsider previously denied and pending claims and give claimants an opportunity to present further evidence. Pursuant to this congressional mandate, Burchett's claim was "reopened" and, on March 12, 1979, the Department sent him a letter inviting him to provide additional medical or other evidence in support of his claim. In response, Burchett did present additional evidence and since the Department believed that this additional evidence entitled claimant to benefits, it notified White Ash that it believed the company was the responsible operator. White Ash contested the claim for benefits and, on June 25, 1981, the claim was sent to an administrative law judge (ALJ) for a hearing.
 
 
 24
 Before the ALJ could resolve the claim, Congress further amended the Black Lung Act by passing the Black Lung Benefits Revenue Act of 1981, Pub.L. No. 97-119, 95 Stat. 1635 (1981), which softened the potential financial blow to individual coal mine operators resulting from a review of these previously denied claims by transferring liability for payment from the operators to the Black Lung Disability Trust Fund. The Fund is not supported by public monies but, rather, is financed by a manufacturer's excise tax assessed against the coal industry as a whole.
 
 
 25
 Based upon this new legislation, White Ash moved for dismissal, arguing that Burchett's claim fell within the purview of the new legislation because the Department's 1979 letter to Burchett "reconsidering" the claim demonstrated that there had been an earlier denial. At the time that White Ash filed this motion to dismiss, it was not aware of the June 15, 1976, letter to claimant telling him that he had ten days to respond with additional medical evidence. Neither the Department nor the claimant opposed the motion. On June 30, 1982, the ALJ granted the motion. On July 22, 1982, the Department moved for reconsideration, arguing that it had not in fact denied Burchett's claim earlier, and the fact that it informed him there was to be a "reconsideration" of his claim did not mean that the claim had been earlier denied. On September 12, 1982, the ALJ vacated his earlier decision and ordered a hearing on the issue of the transfer of liability from the coal mine operator to the Fund (the transfer issue). At this point, claimant Burchett, through counsel, submitted the June 15, 1976, letter from the Department and argued in support of White Ash's position that there clearly had been an earlier denial of his claim.[6]
 
 
 26
 On July 29, 1983, the ALJ remanded the claim to the Department to reconsider the transfer issue. The Department adhered to its position that there had been no denial, notwithstanding White Ash's protestations to the contrary. The issue was then returned to the ALJ who decided, on January 16, 1986, to award benefits to Burchett and ruled that White Ash had failed to carry its burden of proof on the transfer issue and ruled in favor of the Department. This decision was appealed to the Board, which affirmed the decision of the ALJ.
 
 
 27
 We find that on the basis of the record before us we are unable to resolve the transfer issue. If Burchett's letter of June 21, 1976, was sent at that time and received by the Department, it would be dispositive of this issue since it would be clear that Burchett's claim was still pending and had never been denied. Under such circumstances, White Ash would be responsible for paying the benefits. Curiously, however, the Department has never relied on this letter (at least until oral argument), and White Ash argues that the letter, although dated June 21, 1976, was not sent at that time but, rather, was sent after Burchett received notice that his file was being reconsidered.
 
 
 28
 We therefore remand this case to the Secretary to determine when the June 21, 1976, letter was sent and received. It would also be helpful if the docket sheets on this file could be produced so the record would contain information of what the Department was doing, if anything, by way of processing this claim during 1976 and 1977.
 
 
 29
 REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 In contrast, the Board served the opinion on the attorneys for the Secretary of Labor, various officials of the Department of Labor, claimant, claimant's attorney, and the ALJ
 
 
 [2]
 Appeals from decisions and orders of the Benefits Review Board, United States Department of Labor, to the courts of appeals are governed by section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 921(c) (1982), incorporated by section 422(a) of the Black Lung Benefits Act, 30 U.S.C. Sec. 932(a) (1982). Under the statute, an order of the Board must be appealed within 60 days following the issuance of such order. See also 20 C.F.R. Secs. 802.406 and 802.410(a) (1990)
 
 
 [3]
 We caution that a party may not just wait indefinitely if it has not heard from the Board. At some point, a duty arises to make inquiry. We do not believe the relatively short passage of time here would trigger such a duty, however, since the Board is under no specific time limits within which it must issue an opinion
 
 
 [4]
 We also note that there has been much criticism of Rule 77(d) as it interrelates with Federal Rule of Appellate Procedure 4(a), and that, currently, an amendment to Rule 4 is under consideration
 
 
 [5]
 White Ash claims that this letter was not in fact sent to the Department until 1979
 
 
 [6]
 It should be noted that Burchett's support of White Ash's position was self-serving. If there was a transfer of liability to the Fund, he would be relieved from any further burden of having to defend his claim on the merits against White Ash